ROBERT ESTELL v. THE BRICKSBURG LAND AND IM-PROVEMENT COMPANY.

1. The record of a survey of proprietary lands made to the "heirs or assigns" of one of the proprietors, is not void on account of the un-certainty of the party in whose favor it is made.
2. Such survey and record are not a conveyance, and are not to be sub-ject to the same rules of construction.
3. The nature of such recorded surveys discussed.

This was an action of trespass, *quare clausum fregit,* begun in the court for the trial of small causes, but a plea of title being put in, the controversy was transferred to this court. The plea was *liberum tenementum.* The cause coming on for trial before Mr. Justice Scudder, at the Ocean Circuit, the plaintiff proved his damages, and the defendants, claiming title under the proprietors, produced a certified copy of a re-turn to Jesse Richards, embracing the *locus in quo,* dated May 26th, 1815. They then showed, by various documents, the devolution of the title to themselves from Richards.

The plaintiff then produced in evidence a return of thirty-nine and six-tenths acres, which, it was insisted, embraced the *locus in quo,* which was in the words following: "These do certify, that John Anderson, by me duly deputed and sworn, to the intent hereinafter mentioned, did survey, for the heirs or assigns of Edward Byllinge, which the New Jersey Society claim to be, all that tract, &c. To which the heirs or assigns of Edward Byllinge have right, by virtue of a warrant from the council of proprietors, to the heirs or assigns of Edward

Estell v. Bricksburg Land and Improvement Co.

Byllinge, for one thousand acres of pine land, south of Raritan, dated the 29th day of March, 1750, and reco ded in Liber W .3, folio 9, and to which the New Jersey Society claims right; providing always, that if the above tiacts of pine land, or any part thereof, shall be located by any proprietor on any of the dividends of good right, within five years after the recording hereof, then this return is to be so far void. Witness my hand this 7th day of March, 1750–'51. James Alexander, surveyor-general.

The cause was tried at the Monmouth Circuit, and a verdict rendered for the plaintiff. A rule to show cause why the verdict should not be set aside having been allowed, was argued at June Term last, before the CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For plaintiff, *Joel Parker.*

For defendant, *Robert S. Green.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The issue in this case was whether the defendants had title to the premises on which the trespass was committed. The title which the defendants set up was an including survey from the proprietor to Jesse Richards, dated May 26th, 1815. To invalidate this title the plaintiff exhibited a duly certified copy of a return to the "heirs or assigns" of Edward Byllinge, bearing date the 29th of March, 1750. The question of fact tried before the jury was, whether this latter survey embraced the *locus in quo*, and this question has been re-opened on the argument of the present motion for a new trial. I have read the evidence on this subject with care, and I shall dispose of this branch of the case with the remark that there is nothing in the testimony to show that the jury have not reached a correct conclusion.

The remaining topic, and the one with which the argument

of counsel was mainly occupied, related to the legal effect of the return offered in evidence by the plaintiff. On the assumption that it was valid, the jury finding that it comprehended the lands in question, it negatived and overcame the vital allegation of the issue, that the title was in the defendants. The only objection urged against this instrument was, that it was made to the " heirs or assigns" of Edward Byllinge, the argument being that there was not a sufficiently certain description of the grantee, and that it was void for uncertainty. Counsel for the defence treated the return as a deed of conveyance, and appealed to the rules of law, and cited cases which were applicable only on the ground of that assumption. Granting this premise, the conclusion which was deduced was plainly legitimate. But I think the error in the reasoning was in this postulate. A survey made under a proprietary title is not a conveyance. It is an instrument *sui generis*, in the nature of a partition; a customary mode in which a proprietor has set off to himself, in severalty, a part of the common estate. The methods of proceeding, with respect to these lands, have long been a part of the common law of the state, and have been, *ex officio*, taken notice of by the courts. They can be traced through the reported decisions, which clearly define their legal effect. Chief Justice Kirkpatrick, whose learning on the subject of land titles appears to have been very complete, in *Arnold* v. *Mundy*, 1 *Halst.* 11, states, in perspicuous terms, the mode in which this description of property was distributed among the several owners. " The proprietors of New Jersey," he says, " are tenants in common of the soil; their mode of severing this common right is by issuing warrants, from time to time, to the respective proprietors, according to their respective and several rights, authorizing them to survey and appropriate, in severalty, the quantities therein contained. Such warrant does not convey a title to the proprietor; he had that before. It only authorizes him to sever so much from the common stock, and operates as a release to testify such severance. This is manifestly the case when the proprietor locates for himself.

When, instead of locating for himself, he sells his warrant to another, that other becomes a tenant in common with all the proprietors, *pro tanto*, and in the same manner he proceeds to convert his common into a several right. Regularly, there is a deed of conveyance upon the transfer of this warrant, and that deed of conveyance is the foundation of the title of the transferee."

From this citation it is clear, therefore, that the survey and return did not constitute a conveyance, for behind these was the warrant which authorized them, and which originally used to be proved in court making up the chain of a proprietary title. The warrant here referred to was ordered to be issued by the council of proprietors, and was the first step in the appointment of a dividend of the common property to one of themselves, or to a grantee of an original owner. The mode of passing these titles is thus described by Judge Elmer, in his learned and interesting note to the title surveys, (*Nix. Dig.* 935): " Regular deeds of conveyance were made (formerly by lease and release, in modern times by deeds of bargain and sale,) either of a fractional part or of a specified number of acres. A proprietor, or a grantee under him, upon presenting his title to the council, obtains an order for a warrant, which is signed by the clerk and recorded, and which authorizes the surveyor-general, or his deputy, to survey a specified number of acres from any of the unappropriated lands. By virtue of this warrant, a deputy surveyor, who is a sworn officer, runs out a survey, including any number of acres not exceeding the number specified, as the owner chooses to have it, wherever it is supposed other surveys do not cover the ground. The deputy having returned his survey, reciting the warrant and the deductions of the title, with a map, to the surveyor-general, he certifies it to the council, and being by them inspected and approved, it is ordered to be recorded." Formerly, the practice was to prove this series of acts in making out a title in court, but afterwards the courts took judicial notice of the original grants, and now, by the act of 1787, section three, it is declared that after a survey has been

duly entered of record in the proper office, it shall have the effect to "preclude and forever bar" the proprietors and their successors from any demand on the lands embraced thereon, "any plea of deficiency of right or otherwise, notwithstanding." *Nix. Dig.* 510.*

It is evident, I think, from the foregoing summary of the course of proceeding with regard to the distribution of their lands by the proprietors, that the recorded return of the survey is not a deed, but an instrument entirely unknown to the common law. It is not to be tested or construed by the rules applicable to conveyance, but it appears to be an acknowledgment of the common owners that a certain portion of the joint estate has been assigned to one of the original proprietors, or to an assignee of such proprietor. The certainty of the party to whom the title has been passed, is to be ascertained not from the record of the survey, but from the deed of the proprietor, in those cases in which he has parted with the title. The office of the survey and return is fully discharged when it shows that a parcel of designated land has been set apart in severalty, under the title of one of the original holders; to whose benefit such allotment enures, is a matter to be settled, if a stranger claim by the ordinary proofs. But the statute, already cited, of 1787, makes the record of the survey a conclusive bar to all claim upon such property on the part of the proprietors. In this case the record shows that these premises were set apart under the title of Edward Byllinge, who was one of the original proprietors, and a party to the *quinti partite* deed, which made division of the lands held in common between the East and West Jersey proprietors. That record, by force of the statute, precludes the proprietors from claiming any right to the tract embraced in it, and the consequence is, it incontrovertibly shows that when the survey to Jesse Richards was made, his grantors were not the owners of these premises. The defendants, on the issue raised, have not succeeded in establishing their case. The verdict cannot be disturbed.

Rule discharged.

* *Rev.*, p. 599.